861 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary DAUGHERTY, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 No. 87-4112.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Mary Daugherty appeals from the Secretary's denial of her claim for social security disability benefits, contending that her chronic obstructive pulmonary disease renders her disabled. The Administrative Law Judge (ALJ) found that Daugherty could perform light work activity in a relatively clean air environment and that, based on a vocational expert's testimony, a significant number of jobs consistent with her capacity existed in the regional economy. We affirm.
 
 
 2
 Daugherty, a high school graduate, worked for General Motors (GM) for approximately twenty years, most recently as a crash pad repairer. The job at GM exposed her to chemical fumes. She quit working at GM in October 1975 because of breathing difficulties and has not worked since. Her insured status expired on June 30, 1981, but she did not apply for disability benefits until July of 1983. This application was denied on initial consideration and Daugherty did not seek reconsideration of the determination.[1] She filed a new application for disability benefits on April 10, 1985, alleging disability resulting from lung disease, diabetes, and hypertension and stating an onset date of October 22, 1975.[2] This application, denied administratively, is the basis of this appeal.
 
 
 3
 Following an administrative hearing, at which Daugherty and a vocational expert testified, the ALJ issue an opinion denying benefits, concluding that although the medical evidence established that Daugherty suffered from a severe breathing impairment which had significantly affected her exertional capacity and increased her sensitivity to pulmonary irritants, her impairment did not preclude "light exertion in a relatively clean air environment." Based on the testimony of the vocational expert, the ALJ found that there existed a significant number of jobs in the regional economy that Daugherty retained the capacity to perform, and accordingly found her not disabled.
 
 
 4
 The medical evidence in this case consists of the reports of Dr. Booker, Daugherty's treating physician, the results of pulmonary function studies and chest x-rays, and the interpretations of pulmonary function studies by Drs. Casalmire and Graham. Dr. Booker, an internist, first saw Daugherty in 1966 and began treating her for breathing problems in 1975. Between 1975 and 1983, Dr. Booker filed a number of virtually identical, brief, disability insurance forms indicating that, in his opinion, Daugherty's dyspnea (shortness of breath) experienced during usual activity and caused by chronic obstructive pulmonary disease rendered her disabled. Dr. Booker found that pulmonary function studies conducted in June and July of 1975, in June 1977, and in May 1979, showed that Daugherty suffered from mild to moderate ventilatory impairments. In a letter written in 1985 to Daugherty's attorney, Dr. Booker recharacterized Daugherty's ventilatory impairment as "moderately severe" and opined, without further objective studies or tests, that Daugherty was limited to performing no more than sedentary work and that the level of her impairment had not changed since 1975. On several occasions, Dr. Booker also noted that Daugherty suffered from chronic fatigue related to her breathing problems. His reports also usually indicated "lungs clear, no murmurs."
 
 
 5
 Dr. Casalmir, a board-certified specialist in internal medicine, interpreted pulmonary function studies conducted in 1975 as consistent with a "mild" or "mild to moderate" obstructive ventilatory impairment. Based on these tests, he found that Daugherty's forced vital capacity was either "within normal limits" or "slightly reduced." Based on the July 1975 test, Dr. Casalmir found a small "but probably insignificant" improvement following bronchodilator. Dr. Casalmir also interpreted pulmonary function studies conducted in June 1977, six months prior to Daugherty's alleged onset date, and found that total lung capacity, residual volume, and forced vital capacity all were normal, but that forced flow rates were reduced. His studies suggested a "mild to moderate impairment of ventilation" with "no significant improvement following bronchodilator."
 
 
 6
 Dr. Graham interpreted pulmonary function studies conducted in May 1979. He found that the test results indicated "mild to moderate airways obstruction" with a slight improvement following bronchodilators. He concluded: "This study is compatible with obstructive lung disease of moderate degree with a question of a significant reversible component."
 
 
 7
 A chest x-ray performed in June 1977 was read as negative and one conducted in May 1979 showed "a few small calcified granulomas" and "mild linear scarring ... but no active infiltrates." A Miami Hospital Radiology report by Dr. M. Ghanheri in June 1978 indicated "no evidence of active pulmonary infiltration." Dr. Booker's 1985 report to plaintiff's attorney confirmed that in 1979 chest x-rays again showed "essentially normal chest without active pulmonary infiltration." He would limit her to no more than sedentary activity. A chest x-ray performed in November 1983, two years after the expiration of Daugherty's insured status, was also negative.
 
 
 8
 Daugherty's testimony at the administrative hearing was that she could walk only about one-half of a block before having to stop to catch her breath, could stand one or one and a half hours before her legs got weak. Furthermore, she could not go out or work around the house for more than an hour and a half without getting fatigued and having to stop and rest. She stated that her condition had been the same at least since 1979. She testified she did housework with some difficulty.
 
 
 9
 The ALJ found that Daugherty retained the capacity to perform light work activity in a relatively clean environment based on (1) the fact that the results of Daugherty's pulmonary function studies did "not even remotely approach the level of severity" required to satisfy the listing requirement under applicable regulations; (2) a conclusion that Dr. Booker's opinion that Daugherty could perform only sedentary work was not fully credible in light of his own consistent diagnosis of mild to moderate chronic obstructive pulmonary disease; (3) Dr. Casalmir's diagnosis of only mild to moderate chronic obstructive pulmonary disease; and (4) Daugherty's own testimony regarding her regular physical activities. On this basis, the ALJ concluded that Daugherty was capable of "light exertion."
 
 
 10
 We conclude that there is sufficient evidence to support the conclusion of the Secretary. We therefore AFFIRM the decision of the district court.
 
 
 
 [1]
 This prior determinatino of ineligibility for benefits might prove an impediment to Daugherty's instant claim. In fact, the Secretary may apply the principle of res judicata to deny consideration of a benefits claim raising the same issues and facts previously considered by the Secretary in denying a prior claim. See Wilson v. Califano, 580 F.2d 208, 211 (6th Cir.1978); Hunt v. Weinberger, 527 F.2d 544 (6th Cir.1975). This rule applies even if, as in the instant case, no administrative hearing was conducted on the prior claim. Wilson, 580 F.2d 211. We do not decide this issue based on res judicata because the Secretary did not raise this as a defense
 
 
 [2]
 At the administrative hearing, Daugherty amended the alleged onset date to December 22, 1977, which was her fiftieth birthday